UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMMED M. K. FARROUKH**, Plaintiff, v. **UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES**, *et al.*, Defendants. | Case No. 23-cv-198 (CRC) |

**OPINION AND ORDER**

Mohammed M.K. Farroukh is a Palestinian from the West Bank who in June 2015 applied for asylum in the United States, citing fear of persecution.  In August 2018, he also applied for permanent residency.  After two separate interviews with the United States Citizenship and Immigration Services ("USCIS") and almost eight years since his initial application, Mr. Farroukh had received no decision from the agency.  He thus filed this suit to compel USCIS to adjudicate his applications, pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Mandamus Act, 28 U.S.C. § 1361.  USCIS now moves to transfer the case to the Eastern District of Virginia, where Farroukh currently resides, or else dismiss the case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  Farroukh opposes the motion but requests that if the Court finds venue lacking in D.C., it transfer the case to the District of Maryland rather than the Eastern District of Virginia.

The Court agrees with USCIS that the District of Columbia is not a proper venue for this case.  However, considering the convenience of the parties and the interests of justice, the Court

will grant Farroukh's request to transfer the case to the District of Maryland, which the government does not oppose.

I.   **Background**

As alleged in the complaint, Farroukh applied for asylum in June 2015 and USCIS acknowledged receipt of his application from its Arlington, Virginia field office one month later. Compl. ¶¶ 5, 8; Compl. Ex. A.  Then, in August 2018, while his asylum application was still pending, Farroukh applied for permanent residency.  Id. ¶ 17.  He alleges that he "greatly fears persecution if he returns to Palestinian Territories on the basis of his historical persecution" and that he "has been unable to fully start his life in the United States without fear of potentially returning to Palestinian Territories, where he may face further persecution."  Id. ¶¶ 5, 13. Though Farroukh had interviewed with USCIS in connection with both of his applications, at the time this suit was filed in January 2023, the agency had not provided an update on either one. See id. ¶¶ 9–12, 18–19.[1]

Farroukh challenges USCIS's failure to adjudicate his applications as violations of the Administrative Procedure Act, 5 U.S.C. § 706, and the Immigration and Nationality Act, 8 U.S.C. § 1158.  Id. ¶¶ 24–51.  In lieu of a responsive pleading, USCIS filed the instant motion to transfer this case to the U.S. District Court for the Eastern District of Virginia or to dismiss the case altogether for improper venue.  See Mot. to Transfer at 1–10.  Farroukh opposes and, in the alternative, requests that the case be transferred to the U.S. District Court for the District of Maryland.  See Pl.'s Opp'n at 8–11.

---

[1] USCIS notes that Farroukh's asylum application was denied on March 3, 2023, and the agency referred him to an immigration judge for removal proceedings.  Mot. to Transfer at 1 n.1.

II. **Legal Standard**

A court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice," as long as the transferee district is one where the case "might have been brought." 28 U.S.C. § 1404(a). "The moving party bears the burden to establish both (1) that the plaintiff *could* have brought the action in the proposed transferee court and (2) that the action *should* have been brought there." Ike v. USCIS, No. 20-cv-1744 (CRC), 2020 WL 7360214, at *2 (D.D.C. Dec. 15, 2020).

III. **Analysis**

An action against the federal government *could* be brought "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The District of Columbia is not a proper venue on any of these bases. USCIS does not "reside" in this District as it is headquartered in Camp Springs, Maryland.[2] Farroukh originally filed his applications in Arlington, Virginia, meaning that "any delay—that is the 'omissions giving rise to the claim'—has occurred in th[at] district[]." See Pasem v. USCIS, No. 20-cv-344 (CRC), 2020 WL 2514749, at *3 (D.D.C. May 15, 2020); Mot. to Transfer at 1 (citing Compl. Exs. A, B). And at the time he filed the complaint, Farroukh resided in Sterling, Virginia. Compl. at 1. Therefore, no party resides in this District, nor has any relevant conduct occurred here.

---

[2] Although Farroukh contests this point, see Pl.'s Opp'n at 5–7, the Court takes judicial notice that USCIS moved its headquarters to Camp Springs in 2020. U.S. Citizenship and Immigration Servs. (USCIS), U.S. Gov't (last accessed Oct. 11, 2023), https://perma.cc/799Z-KXW3. Following the move, numerous courts have found that the agency does not reside in this District for venue purposes. See Mot. to Transfer at 2 (collecting cases).

Farroukh nonetheless contends that "[t]he claim arose in this District" because it is where "[USCIS's Director] and his agency worked to implement the Immigration and Nationality Act." Pl.'s Opp'n at 4. Even assuming Farroukh could establish venue in D.C. based on the location of USCIS's headquarters at the time he filed his applications, the disputed agency action would have to be the result of "national policies that emanated from agency headquarters" to establish venue based on events or omissions occurring at headquarters. See Bourdon v. U.S. Dep't of Homeland Sec., 235 F. Supp. 3d 298, 305–06 (D.D.C. 2017); see also Barrera v. U.S. Dep't of Homeland Sec., No. 20-cv-2395 (CRC), 2021 WL 5992098, at *3 (D.D.C. Mar. 31, 2021). Farroukh does not allege a nationwide policy of delay at USCIS. To the contrary, in seeking to demonstrate that the delay on his applications has been undue, Farroukh points to USCIS's stated "reference point" of 17 months' processing time for 80% of permanent residency applications filed in the District of Columbia. See Compl. ¶ 20 (citing Ex. F). That the agency customarily processes applications faster than it has processed Farroukh's applications cuts against any finding that the delay is the product of any national policies handed down from the agency's headquarters.

Though the District of Columbia does not satisfy any of the § 1391(e)(1) requirements for proper venue, the Eastern District of Virginia and the District of Maryland both do. The defendant, USCIS, resides in Maryland for venue purposes and Farroukh, the plaintiff, resides in Sterling, Virginia, within the Eastern District. Accordingly, this case could be transferred to either district under 28 U.S.C. § 1404(a) because it "might have been brought" in either one in the first place.

The analysis of whether an action *should* be transferred to a particular district "calls on district courts to weigh in the balance a number of case-specific factors that guide an inquiry into

4

whether transfer is in the public interest and in the private interest of the parties." Pasem, 2020 WL 2514749, at *3 (quotation marks omitted).  Public interest considerations include "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." Roh v. USCIS, No. 21-cv-1291 (RJL), 2021 WL 5050071, at *3 (D.D.C. Nov. 1, 2021) (citation omitted).  Private interest factors include "(1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." Id. at *2 (citation omitted).  Applying both sets of factors does not counsel strongly in either direction.

As to the public interest factors, the local interest in deciding local controversies at home is the chief factor in favor of transfer to Virginia because Farroukh's applications were filed and adjudicated there.  See Pasem, 2020 WL 2514749, at *3.  The other factors are not dispositive. Federal courts are presumed equally familiar with federal law, see Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 20 (D.D.C. 2008), and though the District of Maryland's docket appears slightly more congested on certain measures, see U.S. District Courts – Nat'l Judicial Caseload Profile, https://perma.cc/ZTU3-N3KH, "[t]hese statistics are not perfect indicators of court congestion" and neither party has argued that the caseloads differ significantly enough to move the needle. See Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324, 336 (D.D.C. 2020); Mot. to Transfer at 9; Pl.'s Opp'n at 10.

Consideration of the private interest factors slightly favors the District of Maryland. The Court accords some deference to Farroukh's second choice of forum in Maryland, though this deference is weakened by the fact that Maryland is not Farroukh's home forum and the claim did not arise there. See, e.g., Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179–80 (D.D.C. 2009); Miller v. Insulation Contractors, Inc., 608 F. Supp. 2d 97, 102 (D.D.C. 2009). Though USCIS's choice of forum in Virginia is also relevant, the agency does not object to a transfer to the District of Maryland, where it is located. See Defs.' Reply at 5. As to the convenience of the parties, Farroukh maintains that he would be "severely prejudiced" by transfer to Virginia because his current counsel is barred in D.C. and Maryland but not in Virginia. See Pl.'s Opp'n at 4, 10. Given the added inconvenience and expense associated with retaining additional counsel, and that transfer to Maryland allows the agency to litigate in its home forum, the convenience of the parties favors transfer to the District of Maryland. The convenience of potential witnesses and access to sources of proof are a wash, especially given the close proximity of the two districts.

Though application of these factors does not weigh strongly towards either district, in light of the inconvenience to Farroukh posed by litigating in Virginia, and the lack of objection from the government to defending the case in Maryland, the Court will transfer the case to the District of Maryland.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 4] Defendants' Motion to Transfer or to Dismiss is DENIED. It is further

**ORDERED** that [Dkt. No. 5] Plaintiff's Motion in the Alternative to Transfer is GRANTED. It is further

**ORDERED** that the Clerk of the Court shall transfer this action to the United States District Court for the District of Maryland. It is further

**ORDERED** that Defendants' time to respond to the complaint is extended through, and including, 30 days after this action is docketed in the transferee district.

**SO ORDERED**.

                                                CHRISTOPHER R. COOPER
                                                United States District Judge

Date: October 25, 2023